(Slip Opinion)

# Designating an Acting Director of the Federal Housing Finance Agency

In designating an Acting Director of the Federal Housing Finance Agency, the President may choose either an incumbent Deputy Director under 12 U.S.C. § 4512(f), the vacancy statute that applies specifically to the office of the Director, or someone who is made eligible to be an acting officer by the Vacancies Reform Act of 1998. Under the latter, the President may select the Senate-confirmed Comptroller of the Currency.

March 18, 2019

MEMORANDUM OPINION FOR THE
DEPUTY COUNSEL TO THE PRESIDENT

On December 18, 2018, the Director of the Federal Housing Finance Agency ("FHFA") sent the President a letter of resignation, "effective at midnight on January 6, 2019." Two days later, the President announced his intention to designate the Comptroller of the Currency as FHFA's Acting Director.[1] This Office had previously advised that the President could invoke the Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345–3349d, to make that designation upon the resignation of the incumbent Director. This memorandum explains the basis for that advice, which is consistent with several previous opinions of this Office.

The Vacancies Reform Act provides the President with authority "for temporarily authorizing an acting official to perform the functions and duties" of an officer of an "Executive agency" whose appointment, like that of the FHFA Director, "is required to be made by the President, by and with the advice and consent of the Senate." 5 U.S.C. § 3347(a). The Vacancies Reform Act is the "*exclusive* means" for authorizing acting service in most such positions "unless" another statute expressly designates an officer to serve in an acting capacity or expressly authorizes the President, a court, or an agency head to designate an acting officer. *Id.* (emphasis added). In the case of a vacancy in the office of the FHFA Director, another statute does allow the President to select an Acting Director from among three Deputy Directors appointed by the Director. *See* 12 U.S.C. § 4512(f).

---

[1] *See President Donald J. Trump Announces Intent to Designate Individual to a Key Administration Post* (Dec. 20, 2018), www.whitehouse.gov/presidential-actions/president-donald-j-trump-announces-intent-designate-individual-key-administration-post-2/.

This Office has repeatedly concluded that the Vacancies Reform Act still applies to an executive office, including that of an agency head, when another office-specific statute would enable someone else to serve as the acting officer. The federal courts have consistently agreed that, in such a circumstance, the President may choose between the office-specific statute and the Vacancies Reform Act when designating an acting officer. We therefore advised that the President could invoke the Vacancies Reform Act to designate an Acting Director of FHFA and, in doing so, could select a Senate-confirmed officer, such as the Comptroller of the Currency. *See* 5 U.S.C. § 3345(a)(2).

## I.

In the Housing and Economic Recovery Act of 2008 ("HERA"), Congress established FHFA as "an independent agency of the Federal Government" and charged it with supervising and regulating the following mortgage-financing institutions: the Federal National Mortgage Association (known as "Fannie Mae") and its affiliates; the Federal Home Loan Mortgage Corporation (known as "Freddie Mac") and its affiliates; the Federal Home Loan Banks; and the Office of Finance of the Federal Home Loan Bank System. *See* 12 U.S.C. § 4511(a)–(b). The Director of FHFA is "the head of the Agency," *id.* § 4512(a), and is appointed for a five-year term by the President with the Senate's advice and consent, *id.* § 4512(b)(1)–(2). An incumbent Director may also continue to "serve as the Director after the expiration of the term for which appointed until a successor has been appointed." *Id.* § 4512(b)(4). The FHFA Director is authorized to appoint three deputies: the Deputy Director of the Division of Enterprise Regulation, the Deputy Director of the Division of Federal Home Loan Bank Regulation, and the Deputy Director for Housing Mission and Goals. *Id.* § 4512(c)–(e).

The five-year term of FHFA Director Melvin L. Watt expired on January 6, 2019, and he chose to resign rather than hold over until his successor could be appointed. *See* Letter for the President from Melvin L. Watt, Director, FHFA (Dec. 18, 2018).

## II.

Director Watt's resignation implicated two different statutes, each potentially available for naming an Acting Director of FHFA. First, HERA provides that, "[i]n the event of the death, resignation, sickness, or ab-

sence of the Director, the President shall designate [one of FHFA's three Deputy Directors] to serve as acting Director until the return of the Director, or the appointment of a successor." 12 U.S.C. § 4512(f). Second, the Vacancies Reform Act applies to the vast majority of Senate-confirmed offices in the Executive Branch. *See* 5 U.S.C. §§ 3345(a), 3349c. It is triggered when an officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office," *id*. § 3345(a), and it permits the President to designate, as acting officers, certain executive officials, including those who already hold "office[s] for which appointment is required to be made by the President, by and with the advice and consent of the Senate," *id*. § 3345(a)(2).[2]

Rather than select one of the incumbent Deputy Directors under section 4512(f), the President sought to designate Joseph M. Otting, the Comptroller of the Currency, to act as FHFA Director upon Director Watt's resignation. Because the Comptroller of the Currency is appointed after Senate confirmation, *see* 12 U.S.C. § 2, the President could designate Mr. Otting if the Vacancies Reform Act were available. Accordingly, we considered whether the President could use that statute or whether section 4512(f) provides the exclusive means for designating an Acting Director of FHFA.[3] Consistent with our previous opinions about materially similar offices, we concluded and advised that the President may use the Vacancies Reform Act to designate an Acting Director of FHFA.

---

[2] Director Watt created a vacancy by resigning from office. *See* 5 U.S.C. § 3345(a). If the Director had sought to hold over after the expiration of his term, the Vacancies Reform Act would not have been available unless he were removed or otherwise left office before his successor's appointment. *See id.* §§ 3345(a), 3349b. Separately, HERA provides that a "vacancy in the position of Director that occurs before the expiration of the term for which a Director was appointed" shall be filled through appointment by the President with the Senate's advice and consent. 12 U.S.C. § 4512(b)(3). That provision does not concern the service of an Acting Director, and it was inapplicable here because Director Watt's resignation did not become effective "before the expiration" of his term.

[3] Congress has specified that the FHFA Director must "have a demonstrated understanding of financial management or oversight, and have a demonstrated understanding of capital markets, including the mortgage securities markets and housing finance." 12 U.S.C. § 4512(b)(1). Additionally, the FHFA Director "may not" (1) possess a financial interest in the entities FHFA regulates or their affiliates; (2) hold any position in such entities; or (3) have served as an executive officer or director of such entities during the preceding three years. *Id.* § 4512(g). We did not address whether an *Acting* Director must satisfy these provisions, because, even assuming that they apply, we were informed that Mr. Otting would satisfy them.

**A.**

In four published opinions over the last sixteen years, this Office has concluded that an office-specific statute designating an individual who "may" or "shall" assume an office in an acting capacity in the event of a vacancy did not negate the availability of the Vacancies Reform Act as an alternative mechanism for naming an acting official.

In 2017, we considered the availability of the Vacancies Reform Act for designating an Acting Director of the Bureau of Consumer Financial Protection ("CFPB"), who, like the Director of FHFA, is the single head of an independent agency created after Congress enacted the Vacancies Reform Act. The CFPB's organic statute provides that the CFPB's Deputy Director shall "serve as acting Director in the absence or unavailability of the Director." 12 U.S.C. § 5491(b)(5). We concluded that "[t]he fact that the Deputy Director may serve as Acting Director by operation of the statute . . . does not displace the President's authority under the Vacancies Reform Act." *Designating an Acting Director of the Bureau of Consumer Financial Protection*, 41 Op. O.L.C. __, at *2 (Nov. 25, 2017) ("*Acting Director of CFPB*"). We reasoned as follows:

> By its terms, section 3347(a) provides that the Vacancies Reform Act shall be the "exclusive means" of filling vacancies on an acting basis unless another statute "expressly" provides a mechanism for acting service. It does not follow, however, that when another statute applies, the Vacancies Reform Act ceases to be available. To the contrary, in calling the Vacancies Reform Act the "exclusive means" for designations "unless" there is another applicable statute, Congress has recognized that there will be cases where the Vacancies Reform Act is non-exclusive, i.e., one available option, together with the office-specific statute. If Congress had intended to make the Vacancies Reform Act *unavailable* whenever another statute provided an alternative mechanism for acting service, then it would have said so. It would not have provided that the Vacancies Reform Act ceases to be the "*exclusive* means" when another statute applies.

*Id.* at *5–6. We emphasized that, in addition to the provision establishing that the Vacancies Reform Act will cease to be "exclusive" with respect to some offices (section 3347(a)), another provision entirely excludes some offices from the Act. *Id.* at *10–11 & n.5. The latter provision is entitled "Exclusion of certain officers," and it provides that the Act simply "shall not apply" to certain specified offices (individual members of certain

multi-member agencies and Article I judges). 5 U.S.C. § 3349c. The contrast between those two provisions reinforced our conclusion that section 3347(a)'s non-exclusivity provision does not preclude the use of the Vacancies Reform Act when another statute applies to an office but does not itself purport to be exclusive. *See Sebelius v. Cloer*, 569 U.S. 369, 378 (2013) ("We have long held that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks and brackets omitted).

In *Acting Director of CFPB*, we observed that the only court of appeals to address the issue had reached the same result with respect to the Acting General Counsel of the National Labor Relations Board. *See* 41 Op. O.L.C. __, at *6; *see also Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 556 (9th Cir. 2016) ("neither the [Vacancies Reform Act] nor the [National Labor Relations Act] is the *exclusive* means of appointing an Acting General Counsel"; "the President is permitted to elect between these two statutory alternatives to designate an Acting General Counsel"). We further noted that two of this Office's previous opinions had "recognized that the legislative history confirms this reading of the Vacancies Reform Act." *Acting Director of CFPB*, 41 Op. O.L.C. __, at *6 (citing *Authority of the President to Name an Acting Attorney General*, 31 Op. O.L.C. 208, 209 (2007), and *Designation of Acting Director of the Office of Management and Budget*, 27 Op. O.L.C. 121, 121 n.1 (2003)); *see also* S. Rep. No. 105-250, at 17 (1998). The next year, we reached a similar conclusion with respect to the President's ability to use the Vacancies Reform Act to designate an Acting Attorney General, notwithstanding an office-specific statute under which the Deputy Attorney General would have been the Acting Attorney General. *See Designating an Acting Attorney General*, 42 Op. O.L.C. __, at *3–8 (Nov. 14, 2018).[4]

---

[4] In addition to the instances addressed in our four published opinions, the President invoked the Vacancies Reform Act on at least two other occasions to designate individuals other than those specified in the relevant office-specific statute, even when an official designated by the office-specific statute was available to serve. *See* Presidential Designation of Michael Hager, Assistant Secretary of Veterans Affairs, to serve as Acting Director, Office of Personnel Management (Aug. 11, 2008, effective Aug. 14, 2008); Presidential Designation of Santanu Baruah, Assistant Secretary of Commerce for Economic Development, to serve as Acting Administrator, Small Business Administration (Aug. 13, 2008, effective Aug. 18, 2008).

Since our *Acting Director of CFPB* opinion, several district courts have agreed that the Vacancies Reform Act remains available for acting designations, notwithstanding the simultaneous applicability of office-specific statutes, in the course of rejecting challenges to the President's designations of an Acting Director of the CFPB[5] and of an Acting Attorney General.[6] To date, no court has adopted a contrary conclusion.

## B.

The reasoning of our four previous opinions applies equally to the interaction between the Vacancies Reform Act and the office-specific statute that allows the President to designate a Deputy Director as the Acting Director of FHFA.

Although FHFA is "an independent agency," 12 U.S.C. § 4511(a), it is not governed by a "board, commission, or similar entity that . . . is composed of multiple members," 5 U.S.C. § 3349c(1)(A). The Vacancies Reform Act therefore does not expressly exclude the office of the Director from its coverage. Instead, that Act's relationship with other designation mechanisms is governed by section 3347(a)'s exclusivity provision. The Vacancies Reform Act is not *exclusive* under that provision because section 4512(f) is a "statutory provision [that] expressly . . . authorizes the President . . . to designate an officer or employee to perform the functions and duties of" the office of FHFA Director "temporarily in an acting capacity." 5 U.S.C. § 3347(a)(1)(A).

At the same time, nothing in HERA makes section 4512(f) the exclusive mechanism for designating an Acting Director of FHFA. HERA was enacted in 2008, against the backdrop of the Vacancies Reform Act. Congress knew that the Vacancies Reform Act could apply to a single-member head of an independent agency and to subsequently created

---

[5] *See English v. Trump*, 279 F. Supp. 3d 307, 319–30 (D.D.C. 2018), *appeal dismissed upon appellant's motion*, No. 18-5007, 2018 WL 3526296 (D.C. Cir. July 13, 2018).

[6] *See Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 138–44 (D.D.C. 2019), *appeals docketed*, Nos. 19-5042, 19-5043, 19-5044 (D.C. Cir. Feb. 26, 2019); *United States v. Santos-Caporal*, No. 18-cr-171, 2019 WL 468795, at *6–7 (E.D. Mo. Jan. 9, 2019), *report and recommendation adopted by* 2019 WL 460563, at *1 (E.D. Mo. Feb. 6, 2019); *United States v. Smith*, No. 18-cr-115, 2018 WL 6834712, at *2 (W.D.N.C. Dec. 28, 2018); *United States v. Peters*, No. 17-cr-55, 2018 WL 6313534, at *2–5 (E.D. Ky. Dec. 3, 2018); *United States v. Valencia*, No. 17-cr-882, 2018 WL 6182755, at *2–4 (W.D. Tex. Nov. 27, 2018), *appeal docketed*, No. 18-51008 (5th Cir. Dec. 3, 2018).

offices. *See* 5 U.S.C. § 3349c (exempting only those independent agencies that are headed by multi-member entities); S. Rep. No. 105-250, at 16–17 (noting that both an office-specific statute and the Vacancies Reform Act would be available to fill a vacancy in the office of the Commissioner of the Social Security Administration); *see also Acting Director of CFPB*, 41 Op. O.L.C. __, at *7 n.2 (noting that "[t]he enacted version also removed the requirement [in an earlier bill] that a statutory provision be in effect on the date of the Vacancies Reform Act's enactment in order to be available for filling a vacancy"). Congress could easily have excluded the FHFA Director from coverage under the Vacancies Reform Act—either in section 4512(f) itself, or by amending section 3349c's list of excluded offices—but it did not do so. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (noting "the strong presumption that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute") (internal quotation marks and alterations omitted).

Section 4512(f) is phrased in mandatory terms, providing that "the President *shall* designate either the Deputy Director of the Division of Enterprise Regulation, the Deputy Director of the Division of Federal Home Loan Bank Regulation, or the Deputy Director for Housing Mission and Goals" as the Acting Director in the absence of the FHFA Director. 12 U.S.C. § 4512(f) (emphasis added). But the Vacancies Reform Act also employs mandatory language, stating that the first assistant "*shall* perform the functions and duties" of the vacant office unless the President chooses to direct another official to do so in accordance with the other provisions of the statute. 5 U.S.C. § 3345(a)(1) (emphasis added). "A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow." *Epic Sys. Corp.*, 138 S. Ct. at 1624 (internal quotation marks omitted). When confronting similarly mandatory text in the CFPB's statute, we concluded that "we cannot view either [the CFPB's office-specific statute or the Vacancies Reform Act] as more mandatory than the other. Rather, they should be construed in parallel." *Acting Director of CFPB*, 41 Op. O.L.C. __, at *7 (addressing 12 U.S.C. § 5491(b)(5), which provides that the CFPB's Deputy Director "shall" serve as Acting Director when the Director is unavailable). The same is true here, and the Congress that enacted HERA was aware that the Vacancies Reform Act distinguished between offices to which the Vacancies Reform Act is inapplicable

(5 U.S.C. § 3349c) and those for which it can be rendered non-exclusive (*id.* § 3347(a)).

HERA and the Vacancies Reform Act can be harmonized by reading section 4512(f) as supplementing the President's designation options—a construction that coheres with the strong presumption against any implied repeal. HERA requires that each FHFA Deputy Director possess "a demonstrated understanding" of the financial fields most relevant to his or her role. *See, e.g.*, 12 U.S.C. § 4512(c)(1) (Deputy Director of the Division of Enterprise Regulation must "have a demonstrated understanding of financial management or oversight, and have a demonstrated understanding of mortgage securities markets and housing finance"). Congress could reasonably determine that individuals appointed to these offices would likely be appropriate candidates to serve temporarily as Acting Director of FHFA. The Deputy Directors, however, would not necessarily qualify for designation under the Vacancies Reform Act. None of them is obviously the FHFA Director's "first assistant," 5 U.S.C. § 3345(a)(1); they are not Senate confirmed, *id.* § 3345(a)(2); and they may not be eligible as senior agency officials if, for instance, they recently arrived at the agency, *id.* § 3345(a)(3). In addition, section 4512(f) permits the President to designate one of these pre-screened individuals to serve in an acting capacity for a longer period than the Vacancies Reform Act would otherwise allow. Section 4512(f) thus comfortably co-exists with the Vacancies Reform Act as an alternative means of designating an Acting Director. *See Epic Sys. Corp.*, 138 S. Ct. at 1624 ("Respect for Congress as drafter counsels against too easily finding irreconcilable conflicts in its work."). Because section 4512(f) did not implicitly repeal the applicability of the Vacancies Reform Act to the office of the FHFA Director, the President may choose to "direct a person who serves in" a Senate-confirmed office "to perform the functions and duties" of the FHFA Director "temporarily in an acting capacity subject to the time limits of [5 U.S.C. §] 3346." 5 U.S.C. § 3345(a)(2).[7]

---

[7] This conclusion is reinforced by the report of the Senate Committee on Governmental Affairs, which listed forty specific statutes to which the Vacancies Reform Act was intended to offer an alternative. *See* S. Rep. No. 105-250, at 16–17. That list included, for example, 15 U.S.C. § 633(b)(1), which concerns the Administrator of the Small Business Administration and provides that "[t]he Deputy Administrator shall be Acting Administrator . . . during the absence or disability of the Administrator or in the event of a vacancy in the office of the Administrator." *See* S. Rep. No. 105-250, at 16. The list also included 44 U.S.C. § 2103(c), which provides that "the Deputy Archivist shall act as Archivist [of the United States]" "[d]uring any absence or disability of the Archivist" and "[i]n the

Although HERA authorizes one method of presidential designation, we do not read it as displacing the President's alternative authority under the Vacancies Reform Act. In sustaining the legality of the President's designation of an Acting Director of the CFPB, a district court recently emphasized that the CFPB's office-specific provision "is silent regarding the *President*'s ability to appoint an acting Director." *English*, 279 F. Supp. 3d at 322. The court noted that the CFPB-specific provision "does not expressly prohibit the President from" naming an acting Director of the CFPB, "[n]or does it affirmatively require the President to appoint a particular person." *Id.* (citing 12 U.S.C. § 4512(f)). According to the court, "[t]his silence makes it impossible to conclude that [the CFPB-specific provision] 'expressly' makes the [Vacancies Reform Act]'s appointment mechanisms unavailable" in the case of the CFPB. *Id.* Although it cited section 4512(f) as an example where Congress was not silent about the President's ability to designate an Acting Director, the court did not (and had no need to) consider whether that statute went further by displacing the Vacancies Reform Act, and its dictum did not deny that the Vacancies Reform Act is, as explained above, equally "affirmative[]." Consistent with our prior analysis of this question, we conclude that, when addressing the office of FHFA Director in section 4512, Congress failed to employ the "language that [it] would have used to expressly displace the [Vacancies Reform Act]." *Id.*[8]

In fact, the contrary result—reading section 4512(f) as the sole option for presidential designation—could raise constitutional concerns by significantly curtailing the President's ability to choose who will lead an

event of a vacancy in the office of the Archivist." *See* S. Rep. No. 105-250, at 16. As under the FHFA Director provision, the set of individuals eligible for designation under those two statutes is significantly narrower than those from whom the President could choose under the Vacancies Reform Act. These examples demonstrate that "Congress plainly intended in those cases that the President could invoke the Vacancies Reform Act as 'an alternative procedure' and depart from the statutory order of succession," even when an office-specific statute speaks in mandatory terms. *Acting Director of CFPB*, 41 Op. O.L.C. __, at *8 (quoting S. Rep. No. 105-250, at 17); *see also Guedes*, 356 F. Supp. 3d at 143 ("The legislative history not only speaks to the issue; it confirms the government's interpretation. [Office]-specific statutes . . . were expected to operate alongside the [Vacancies Reform Act], not to displace it.").

[8] FHFA differs from the CFPB in one other respect. HERA lacks a provision comparable to 12 U.S.C. § 5491(a), which makes title 5 generally applicable to the CFPB. We did not, however, rely on the presence of that provision in *Acting Director of CFPB*, and the text and structure of the Vacancies Reform Act are sufficiently clear to make it applicable (though not exclusively so) to an agency with an office-specific statute.

executive agency. FHFA's Deputy Directors are appointed by the Director, who is himself appointed for a five-year term and statutorily protected from removal without "cause." 12 U.S.C. § 4512(b)(2), (c)(1), (d)(1), (e)(1). The President therefore has no express or implied power to remove the Deputies from their positions as Deputy Directors. *See Keim v. United States*, 177 U.S. 290, 293 (1900) ("In the absence of specific provision to the contrary, the power of removal from [an inferior] office is incident to the power of appointment."); *see also Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 493 (2010). In the absence of the Vacancies Reform Act's alternative mechanism, section 4512(f) might oblige the President to select an Acting Director from among the three Deputy Directors who were appointed by a departed Director from a previous administration. And the Senate could indefinitely limit the President's control over FHFA by declining to confirm his Director nominee. *Cf. Swan v. Clinton*, 100 F.3d 973, 986 (D.C. Cir. 1996) ("[A]ccording holdover Board members [of the National Credit Union Administration] removal protection might be pushing the constitutional envelope to the edge, because this protection could in practice serve to give the Senate control over holdover members' tenure in office or to preclude Presidents from being able to replace holdover members for substantial periods of time."). Such interference with the President's constitutional role as head of the Executive Branch (U.S. Const. art. II, § 1, cl. 1) and his constitutional obligation to "take Care that the Laws be faithfully executed" (*id.* art. II, § 3) would be avoided if the President could also use the Vacancies Reform Act to select an Acting Director from those whom he has already appointed to other offices with the Senate's advice and consent, or from eligible senior agency employees.

Finally, we note that a panel of the Fifth Circuit, in a later-vacated decision addressing the constitutionality of the FHFA Director's tenure protection, observed that the "statutory provisions governing how to *replace* the FHFA Director may blunt the effectiveness of [the President's ability to control the agency through] 'for cause' removal. . . . [T]he President must designate an acting Director from the ranks of Deputy Directors[.]" *Collins v. Mnuchin*, 896 F.3d 640, 667 n.199 (5th Cir.), *vacated upon grant of reh'g en banc*, 908 F.3d 151 (5th Cir. 2018); *see* 5th Cir. R. 41.3. Although the panel assumed that the President would employ section 4512(f) to designate an Acting Director, its opinion did not consider the applicability of the Vacancies Reform Act. We therefore do not read the opinion as reflecting a considered view on the matter at issue here.

## III.

For the reasons set forth above, we conclude that, in designating an Acting Director of FHFA, the President may choose either an incumbent Deputy Director under 12 U.S.C. § 4512(f) or someone who is made eligible to be an acting officer by the Vacancies Reform Act, 5 U.S.C. § 3345(a)(2), (3). Under the latter, the President may select the Senate-confirmed Comptroller of the Currency. *Id.* § 3345(a)(2).

CURTIS E. GANNON
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*